Kenneth ABRAMS, et al., Appellants
Cross–Appellees

v.

COMMUNICATIONS WORKERS OF AMERICA, An unincorporated Labor Organization, Appellee Cross–Appellant.

Nos. 93–7171, 93–7172.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1994.

Decided July 21, 1995.

Hugh L. Reilly, Springfield, VA, argued the cause for the appellants/cross-appellees. On brief was Raymond J. LaJeunesse, Jr., Springfield, VA.

James B. Coppess, Washington, DC, argued the cause for the appellee/cross-appellant. On brief was Laurence S. Gold, Washington, DC.

Before: SILBERMAN, HENDERSON and TATEL, Circuit Judges.

Separate opinion concurring in part and dissenting in part filed by Circuit Judge TATEL.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants are four telephone company employees (employees) represented by the Communications Workers of America (CWA or Union) in collective bargaining with their respective employers. They are not members of the Union and have objected to paying CWA a mandatory agency fee above the amount necessary to compensate it for the costs of representing them. The employees allege that the Union has breached its duty of fair representation by providing inadequate notice to workers of their right to object and by using improper procedures to calculate the portion of its expenses attributable to collective bargaining and to processing objections. They appeal the district court's grant of summary judgment against

them on all but one issue as well as the denial of their two motions for class certification.[1] We affirm in part and reverse in part.

## I. BACKGROUND

As the district court recognized, "[t]he facts of this case are long and complicated. They are, however, not in dispute." *Abrams v. Communications Workers of Am.*, 818 F.Supp. 393, 395 (D.D.C.1993). In summary, the Union is the appellants' exclusive representative under the National Labor Relations Act (NLRA). 29 U.S.C. § 159(a). The NLRA authorizes the Union to require as part of its collective bargaining agreement with employers that all nonmember employees represented by it "shall as a condition of employment pay or tender to the Union amounts equal to the periodic dues applicable to members." 29 U.S.C. § 158(a)(3); *see* Joint Appendix (JA) 172. To opt out of subsidizing union expenses unrelated to worker representation, a nonmember employee must affirmatively object each year to paying an amount equivalent to the dues paid by member employees.

CWA informs nonmembers of their right to object by a notice distributed yearly to all employees. The notice appears in the Union newsletter, the *CWA News.* JA 74. The notice provides a general description of the Union's procedure for receiving and handling objections and the classes of expenses it considers both "chargeable" (related to collective bargaining and other employee representation activities) and "nonchargeable" (related to other union activities). *Id.* The Union distributes the notice in March and objectors may file at any time through mid-June. CWA's fee year begins in July. The Union accepts late objections only from new employees or those with a "reasonable excuse." 818 F.Supp. at 397. At the beginning of the fee year an objector receives from the Union an "advance reduction" payment equal to the amount attributable to nonchargeable expenditures that will be deducted from his paychecks during the coming year. Along with the payment the Union provides a detailed accounting of its expenses and a description of the expenses it considers chargeable and nonchargeable. The description is more detailed than the one included in the Union's general notice. JA 75–91.

The amount of advance reduction payment is calculated by an outside accounting firm. The firm bases its calculation on the portion of time Union employees spent on activities not related to collective bargaining during the preceding year. It obtains the data underlying its calculation from timesheets distributed to the Union staff once every thirteen weeks. Any employee who challenges the amount of the advance reduction must do so within 30 days of receiving the payment. Under CWA policy the objection is then referred to arbitration. JA 74.

In October 1987 the employees brought suit against CWA in district court. JA 38. Their complaint alleged that the Union's objection procedures violated its duty of fair representation arising under the NLRA. The district court initially denied the employees' request for class certification of

> nonmembers of the CWA employed by employers in interstate commerce who are subject to collective bargaining arrangements made under color of NLRA § 8(a)(3) . . . and § 9(a) . . . which require them to pay fees to CWA as a condition of employment.

JA 9 (D.D.C.1989). It subsequently denied the employees' motion to certify two subclasses, one comprised of objectors, the other of "free-riders," whom the district court described more simply as one of "potential objectors." JA 13 (D.D.C.1991).

The employees' claims fall into three categories. First, they challenge the Union's notice of its objection procedures, asserting that the notice is premised on an overbroad definition of chargeable expenditures and does not adequately notify the employees of their rights. Second, they argue that the Union's accounting methods are unreliable and inaccurate. Third, they challenge the CWA's system for receiving objections and

---

1. The court previously affirmed an order dismissing the employees' first amendment claim and denying them preliminary injunctive relief. *Abrams v. Communications Workers of America,* 702 F.Supp. 920 (D.D.C.1988), *aff'd,* No. 88–7234, 1989 WL 76740 (D.C.Cir. July 13, 1989).

processing refunds, maintaining that the Union can neither limit the period for objectors to object, including on an annual basis, nor require arbitration of fee disputes. The district court granted summary judgment to the Union on all claims except CWA's arbitration policy. 818 F.Supp. at 400–07. The employees appeal the summary judgment as well as the denial of their class certification requests and CWA cross-appeals the district court's ruling on its arbitration policy.

## II. DISCUSSION

 The Union's status as an exclusive bargaining representative "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). These obligations are referred to as the duty of fair representation. *See id.* A claim that a union has breached its duty of fair representation ordinarily is evaluated to determine whether "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. A union's fair representation duty in the context of a mandatory agency fee hinges on its compliance with section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3). *Communications Workers of*

Am. v. Beck, 487 U.S. 735, 742–44, 108 S.Ct. 2641, 2647–48, 101 L.Ed.2d 634 (1988).[2]

"Taken as a whole, § 8(a)(3) permits an employer and a union to enter into an agreement requiring all employees to become union members as a condition of continued employment, but the 'membership' that may be so required has been 'whittled down to its financial core.'" *Id.* at 745, 108 S.Ct. at 2648 (quoting *NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963) (footnote omitted)).[3] The Supreme Court has defined the types of expenses within the financial core that a union can lawfully require nonmember employees to pay and has outlined procedures necessary to protect the rights of objectors. *See, e.g., Ellis v. Railway Clerks*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) (delineating permissible expenses under section 2, Eleventh of the Railway Labor Act); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (describing adequate procedures to protect objectors). This case requires us to decide whether CWA correctly designated the expenses within the financial core and whether CWA's objection procedures are authorized under Supreme Court precedent.

### A. Class Certification

 We initially consider whether the district court erred in denying the employees'

2. In *Beck* the Supreme Court confirmed the jurisdiction of federal courts to evaluate section 8(a)(3) claims "insofar as such a decision is necessary to the disposition of [a] duty-of-fair-representation challenge" even though primary jurisdiction lies in the National Labor Relations Board. 487 U.S. at 743, 108 S.Ct. at 2647–48. Here, as in *Beck*, the employees "claim that the union failed to represent their interests fairly and without hostility by negotiating and enforcing an agreement that allows the exaction of funds for purposes that do not serve their interests and in some cases are contrary to their personal beliefs." *Id.; see* Complaint ¶¶ 5–8 (*reprinted in* JA 40–42). CWA, again as in *Beck*, defends "on the ground that the statute authorizes precisely this type of agreement." 487 U.S. at 743, 108 S.Ct. at 2647–48; *see* CWA Br. at 17.

3. Section 8(a)(3) makes it an unfair labor practice for an employer
 by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That

nothing ... shall preclude an employer from making an agreement with a labor organization ... to require as a condition of employment membership therein.... *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms or conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.
The provision applies to the union through 29 U.S.C. § 158(b)(2), which makes it an unfair labor practice for a labor organization or its agents "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section."

requests for class certification. The employees sought under Fed.R.Civ.P. 23 to certify a class comprised of "themselves and all other nonmembers of the CWA employed by employers ... who are subject to collective bargaining agreements made under or under color of [the NLRA], which require them to pay fees to CWA as a condition of employment." JA 40. The district court denied certification, reasoning, first, that no cause of action existed for a "potential" objector because a worker's dissent cannot be presumed and, second, that the plaintiffs had not shown that their claims for relief are typical of all nonmembers, whether "potential" objectors or "actual" objectors who had expressed their dissent. JA 10. We conclude, however, that all agency shop employees can assert a common interest for the purpose of class certification in challenging the adequacy of the union's notice alerting them to their right to object to full payment of union dues.

It is irrelevant to the notice issue whether an agency shop employee *later* becomes an "actual" objector or remains a "potential" objector since the union must provide notice *in advance of* an employee's decision to object.[4] All members of the class sought to be certified have an interest in requiring the Union to fully inform them of their objection rights so they can decide whether to exercise them. The district court's concern that the relief sought might not be typical of all class members is answered by the same analysis. If the Union's notice were found to be inadequate, all workers would be entitled to injunctive and declaratory relief.

Despite the district court's suggestion to the contrary, *see* JA 10, no court has held that a class consisting of all agency shop employees may not be certified for the purpose we have described. Although an employee's dissent "is not to be presumed," *International Ass'n of Machinists v. Street,* 367 U.S. 740, 774, 81 S.Ct. 1784, 1802–03, 6 L.Ed.2d 1141 (1961), this mandate does not control where the class seeks to vindicate its right to notice, directly affecting whether an employee will *become* an "affirmative dissenter." *Compare id.* (finding class inappropriate in suit for injunctive relief against political expenditures and for restitution because all members of proposed class had not "specifically objected to the exaction of dues for political purposes."); *Brotherhood of Ry. & S.S. Clerks v. Allen,* 373 U.S. 113, 119, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963) (same). In misapplying the holdings in *Street* and *Allen,* the district court committed reversible error. *Frazier v. Consolidated Rail Corp.,* 851 F.2d 1447, 1456 (D.C.Cir. 1988) (denial of class certification may be reversed "only if it resulted from the application of incorrect legal criteria or if it constituted an abuse of discretion.")

■ The district court similarly erred in denying the employees' subsequent motion to certify a subclass of "true dissenters" who have objected to paying full agency fees. JA 13–14. The district court did little more than restate its earlier reasoning even though the proposed class fully met the concerns expressed by the Supreme Court. In *Street* the Court concluded that the action was "not a true class action, for there is no attempt to prove the existence of a class of workers who had specifically objected to the exaction of dues for political purposes." 367 U.S. at 774, 81 S.Ct. at 1802. The employees have made the attempt here and the subclass of actual objectors can, and should, be certified for the portion of the lawsuit challenging CWA's objection procedure.[5]

### B. *Notice to Employees and Definition of Chargeable Expenses*

■ The next question is whether the Union provides adequate notice to workers of their right to object and of the nature of the expenses they are required to pay. The employees initially challenge the facial validity of the union-security clause contained in the collective bargaining agreement between

---

4. Moreover, an "actual" objector in one year becomes a "potential" objector the next year as a result of CWA's policy requiring workers to renew their objections annually.

5. We need not consider the other proposed subclass of "free riders" or "potential objectors" since the only interest of that subclass, that of receiving adequate notice of its objection rights, is included in the interest pursued by the class of all agency shop employees.

their employers and CWA inasmuch as it requires workers to make payments "equal to the periodic dues applicable to members" even though workers are obligated to pay only those expenses included in the financial core. In *International Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. NLRB (IUEW)*, 41 F.3d 1532, 1538–39 (D.C.Cir.1994), we recently rejected an identical argument regarding a clause which on its face mandated union membership and we need not revisit that question here.

More troubling is the side notice the Union provides to workers informing them of their right to object. The notice, which restates the Union's objection policy, provides in part:

> Under the Communications Workers of America policy on agency fee objections, employees who are not members of the Union, but who pay agency fees, may request a reduction in that fee based on their objection to certain kinds of Union expenditures. . . .

The policy provides an objection period each year during May, followed by a reduction in the objector's fee for the twelve months beginning with July and running through June the following year.

Briefly stated, CWA's objection policy works as follows:

> 1. The agency fee payable by objectors will be based on the Union's expenditures *for those activities or projects normally or reasonably undertaken by the Union to represent the employees in its bargaining units with respect to their terms and conditions of employment.*

JA 74 (emphasis added). In *Hudson* the Supreme Court held that "[b]asic considerations of fairness ... dictate that the potential objectors be given sufficient information

to gauge the propriety of the union's fee."[6] 475 U.S. at 306, 106 S.Ct. at 1076.[7] We conclude that CWA's notice is inadequate because it defines financial core expenses too broadly and because it fails to adequately inform employees of their *right* to object.

*Beck* answered in the negative the question "whether [the] 'financial core' includes the obligation to support union activities beyond those germane to collective bargaining, contract administration, and grievance adjustment." 487 U.S. at 745, 108 S.Ct. at 2648. In *Hudson* the Court found the union's disclosure "inadequate" where

> [i]nstead of identifying the *expenditures for collective bargaining and contract administration* that had been provided for the benefit of nonmembers as well as members—and for which nonmembers as well as members can be charged a fee—the Union identified the amount that it admittedly had expended for purposes that did not benefit dissenting nonmembers.

475 U.S. at 306–07, 106 S.Ct. at 1076 (emphasis added). The definition of chargeable expenses included in CWA's notice as activities undertaken to represent employees "with respect to their terms and conditions of employment" does not adequately notify the employees of their right to object or of the legitimate scope of chargeable expenses under *Beck.* While in *Ellis*, on which the *Beck* decision relied, the Court stated that "the test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues," *id.* 466 U.S. at 448, 104 S.Ct. at 1892, the *Beck* opinion appears to embrace a more restrictive formulation of the test. *See* 487 U.S. at 745, 108 S.Ct. at 2648 ("financial core" of employee obligations

---

**6.** The dissent takes issue with our interpretation of *Hudson* but the quoted language makes clear that *potential* objectors must be given adequate notice. Although the Supreme Court addressed the issue in the context of "information about the basis for the proportionate share" of financial core expenses, 475 U.S. at 306, 106 S.Ct. at 1075, the same "basic considerations of fairness" necessarily extend to a union's notice to workers of their *right* to object to payment of any expenses beyond the financial core.

**7.** Although in *Hudson* the challenge to the union agency fee was made on constitutional grounds, its holding on objection procedures applies equally to the statutory duty of fair representation inasmuch as the holding is rooted in "[b]asic considerations of fairness, as well as concern for the First Amendment rights at stake." 475 U.S. at 306, 106 S.Ct. at 1076.

owed to union representatives may not include support for activities "beyond those germane to collective bargaining, contract administration, and grievance adjustment."). The Court also stated that it was "construing both § 8(a)(3) and § 2, Eleventh as permitting the collection and use of only those fees germane to collective bargaining," *id.* at 754, 108 S.Ct. at 2653, and noted that the legislative history of § 8(a)(3) "is consistent with the view that Congress understood § 8(a)(3) to afford nonmembers adequate protection by authorizing the collection of only those fees necessary to finance collective bargaining activities." *Id.* at 759, 108 S.Ct. at 2656.

The objectors in both *Beck* and *Ellis* challenged the expenditure of agency fees for activities that included "participating in social, charitable, and political events," *id.* at 740, 108 S.Ct. at 2646; yet the same activities could fall within the scope of the phrase "represent[ing] employees ... with respect to their terms and conditions of employment" contained in the CWA policy. JA 74. The fact that the CWA notice lists "legislative activity" and "support of political candidates" as non-chargeable expenses does not cure the imprecision, and therefore overbreadth, of the notice.[8] The *Beck* and *Ellis* holdings foreclose the exaction of mandatory agency fees for such activities, and, in our view, additionally require that the Union notice not use language which might lead workers to conclude that such activities are chargeable.[9]

We also conclude that the CWA notice inadequately explains the nature of a worker's right to object to payment of the full agency fee. The notice describes the right to object as arising "[u]nder the Communications Workers of America policy" instead of from the restrictive interpretation placed on the Union's statutory authority by the *Beck* Court. In light of our determination in *IUEW* that the union-security clause in the collective bargaining agreement need not alert workers to their right, we believe that an adequate side notice under *Hudson* must alert an employee to his *legal* right to object to payment of a full agency fee. Characterizing the right as CWA "policy" could lead an employee to conclude that objecting would be futile because the decision to grant a reduction rests entirely within the Union's discretion. 475 U.S. at 306, 106 S.Ct. at 1075–76.

■ Finally we address the adequacy of the information the Union gives to new employees. The CWA notice provides that "agency fee payers who are new to the bargaining unit may object within thirty days of receiving this notice (retroactive to the commencement of their union security obligation and for the duration of the annual objection period)." JA 74. One reading of the notice is that a new employee is charged a full agency fee from the time of his hire until receipt of the notice and can obtain a rebate in fees only if he objects. If so read, the policy is clearly inconsistent with *Ellis,* which held that "by exacting and using full dues, then refunding months later the portion that it was not allowed to exact in the first place ... the union obtains an involuntary loan for purposes to which the employee objects." 466 U.S. at 444, 104 S.Ct. at 1890. Although CWA represented at oral argument that new

---

8. We disagree with the employees' contention that CWA must demonstrate that chargeable expenses provide an "actual benefit" to nonmembers. As the district court declared, "[p]laintiffs want CWA to have to prove that all charged expenses, no matter how squarely those expenses fall with the Supreme Court's definition of chargeable ones, actually benefit them. There is no basis for such a requirement in Supreme Court precedent or in CWA's statutory duty of fair representation." 818 F.Supp. at 404.

9. In *Ellis* the Court stated that objectors can be required to pay "not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities ... employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit." 466 U.S. at 448, 104 S.Ct. at 1892. The statement derives from the recognition that Congress permitted mandatory agency fees in order to ensure that a union could recover its expenses from employees "on whose behalf the union was obliged to perform its statutory functions, but who refused to contribute to the cost thereof." *Id.* Because the union's function under the NLRA is to "be the exclusive representative[ ] of all the employees ... for the purposes of collective bargaining," 29 U.S.C. § 159(a), the *Ellis* language is no more than a restatement of the established proposition that expenses must be *"germane* to collective bargaining." *Allen,* 373 U.S. at 121, 83 S.Ct. at 1163 (emphasis added).

employees receive some further notice at the time of hiring, we cannot determine from the policy language or elsewhere in the record whether the notice is timely and adequate. Accordingly, we will remand to the district court for further findings on this issue.

## C. Accounting for Chargeable Expenses

■■■■ The employees further contend that CWA's method of accounting for its chargeable expenses does not furnish a reliable basis for calculating the fees they must pay. "Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion." *Allen*, 373 U.S. at 122, 83 S.Ct. at 1163. The union must demonstrate by a preponderance of the evidence that its expenses are chargeable. *Ellis*, 466 U.S. at 457 n. 15, 104 S.Ct. at 1897 n. 15. Although the parties vigorously dispute the issue, we agree with the district court that CWA has met its burden.

For one week of every thirteen weeks CWA employees record their activities on time sheets according to one of twenty-four categories. JA 252. An outside firm, Westat, Inc., determines from the time sheets how much time is spent on chargeable and non-chargeable activities. Westat also randomly telephones employees to verify the information provided. Its verification has discovered few reporting errors that resulted in a chargeable activity being reclassified as nonchargeable. 818 F.Supp. at 405. Independent certified public accountants annually audit the allocations resulting from Westat's work. Each year they have issued "unqualified" opinion letters, the strongest assurances available, concluding that the allocations fairly represented the CWA's chargeable and nonchargeable expenses.[10] *Id.* at 404. The employees counter with a report prepared by a professor of accounting and auditing at Harvard Business School who

concluded that the Union's method allows CWA employees to skew time reporting toward chargeable activities. The report primarily asserts that advance notice of the reporting period allows CWA personnel to bunch chargeable time during that period. JA 191. The employees argue that only contemporaneous daily time reports "with an expanded comment section requiring specific identification of the activities performed and recorded" can ensure accuracy. JA 198.

The record supports the district court's determination that CWA met its burden of proof. The Union's evidence established that Westat's verification discovered few discrepancies between the time reported on the time sheets and the information gathered during its telephone checks and that the overall data did not support an inference of systematic misreporting. JA 106–08 (DiGaetano Decl. ¶¶ 13–14). In response, the employees offered no evidence that CWA in fact packed disproportionate amounts of its chargeable time into the monitored weeks. Accordingly, we uphold the district court on this issue.

## D. Objection Procedures and Arbitration

■■■■ Finally, the employees argue that CWA's objection procedure violates its duty of fair representation by requiring them to object within a limited "window period" each year and to renew their objections annually. As did the district court and other courts considering similar union procedures,[11] we find neither procedure unduly burdensome. Regarding the window period, "[t]he union, as well as the employees, have an interest in the prompt resolution of obligations and disputes. The ... window facilitates prompt resolution and leaves no doubt as to the timing of the requirement for making an objection." *Kidwell v. Transportation Communications Int'l Union*, 731 F.Supp. 192, 205 (D.Md.1990), *aff'd in part and rev'd in part on other grounds*, 946 F.2d 283 (4th Cir.1991), *cert. denied*, 503 U.S. 1005, 112

10. The accountants do not audit the underlying data generated by Westat, accepting the data as "a recognized statistical group" and Westat's sampling methods as "recognized procedures." JA 248 (Beans Dep.).

11. 818 F.Supp. at 403 and cases discussed *infra*.

S.Ct. 1760, 118 L.Ed.2d 423 (1992).[12] Similarly, the annual renewal requirement is permissible in light of the Supreme Court's instruction that "dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee." *Street*, 367 U.S. at 774, 81 S.Ct. at 1803. "[W]e do not consider unreasonable the [policy] provision that each member be required to object each year so long as the union continues to disclose what it must before objections are required to be made." *Tierney v. City of Toledo*, 824 F.2d 1497, 1506 (6th Cir.1987).

■ We also affirm the district court's ruling that CWA's procedure requiring an objector who challenges the allocation of chargeable and non-chargeable expenses to exhaust Union-provided arbitration violates its duty of fair representation by limiting the choice of forum for the challenge.[13] "The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Nothing in the collective bargaining agreement requires arbitration; it is provided for only in CWA's constitution. JA 172, 175. CWA contends that it has not in fact breached its duty inasmuch as it merely raised the arbitration issue as an affirmative defense below. The employees' challenge, however, is to the *facial* validity of the CWA policy and on that

score there is little doubt that the CWA's fair representation duty has been breached.[14]

\* \* \*

For the foregoing reasons, we reverse the judgment of the district court regarding the Union's notice to employees of their objection rights as well as the Union's definition of chargeable expenses. We also reverse the district court's denial of class certification. We remand for further proceedings consistent with this opinion regarding the Union's notice to new employees of their right to object. In all other respects, we affirm.

*So ordered.*

TATEL, Circuit Judge, concurring in part and dissenting in part:

I agree that neither CWA's method of accounting for expenses chargeable to non-union employees nor its requirement that objecting employees lodge their objections annually during a prescribed window violates the duty of fair representation. I also agree that CWA violates its duty of fair representation by requiring nonunion employees challenging CWA's allocation of chargeable and nonchargeable activities to exhaust union-provided arbitration. I therefore concur in parts II.C and D of the court's opinion. I respectfully dissent from part II.B because I believe that CWA's notice adequately informs employees of their right to object to funding nonrepresentational activities.

In rejecting CWA's notice, the court concludes that some employees who might oth-

---

**12.** The holding in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which the employees rely on to assert that a six-month limitations period is the applicable period within which to assert a claim based on the union's duty of fair representation, is inapposite to the window period issue for two reasons. First, *DelCostello* considered only whether the state or federal statute of limitations contained in section 10(b) of the NLRA applies to a claim of breach of the duty of fair representation. *Id.* at 154, 103 S.Ct. at 2285. Second, an employee's annual objection to making payments to CWA above the financial core is not a claim for breach of a union's duty of fair representation.

**13.** As the district court made clear in denying the Union's motion for reconsideration, CWA's policy is "*if* a nonmember chose to challenge CWA's

fee determination before some impartial decisionmaker, the nonmember had to do so through arbitration rather than through suit in federal court, before the National Labor Relations Board, or in some other forum." 830 F.Supp. 17, 18 (D.D.C.1993) (emphasis in original). Nevertheless we believe, as did the district court, that the CWA policy is facially invalid inasmuch as "arbitration 'is the *only avenue* CWA provides objectors to challenge the CWA calculation,' and ... this 'arbitrary forum choice' violates CWA's duty of fair representation." *Id.* at 18 (*quoting* 818 F.Supp. at 407) (emphasis in original).

**14.** *Communications Workers of Am. v. American Tel. & Tel. Co.*, 40 F.3d 426 (D.C.Cir.1994), relied on by the union, is inapposite. The case involved the exhaustion requirement contained in the Employee Retirement Income Security Act.

erwise object may choose not to do so out of a mistaken sense of futility because they erroneously believe that "the decision to grant a reduction rests entirely within the Union's discretion." Maj. Op. at 1380. Yet CWA's notice clearly states that "[t]he agency fee payable by objectors *will* be based on the Union's expenditures" for representational activities. Joint Appendix (J.A.) at 74 (emphasis added). And of critical importance, nothing in the record establishes or even suggests that CWA's notice has ever led any employees in any way to misunderstand their rights after the Supreme Court decided *Communications Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). I therefore do not believe that CWA's use of this particular notice is arbitrary, discriminatory, or in bad faith, as is required to constitute a breach of the duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967).

As I read *Beck* and its progenitors, I also believe that CWA's notice adequately informs potential objectors of the type of union activities that they are obligated to fund. The notice states that objectors must pay only for "those activities or projects normally or reasonably undertaken by the Union to represent employees in its bargaining units with respect to their terms and conditions of employment." J.A. at 74. To me, this definition is equivalent to what the Supreme Court in *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984), called "the test" of chargeable expenses: "whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues."

Acknowledging both the *Ellis* formulation and the Supreme Court's subsequent reliance on this formulation in *Beck*, my colleagues conclude that *Beck* adopted "a more restrictive formulation of the test" by limiting chargeable expenses to " 'those germane to collective bargaining, contract administration, and grievance adjustment.' " Maj. Op.

at 1380 (quoting *Beck*, 487 U.S. at 745, 108 S.Ct. at 2648–49). With all due respect, I can find nothing in *Beck* or elsewhere indicating that this alternative formulation is any more restrictive than the *Ellis* test. While the phrase "collective bargaining, contract administration, and grievance adjustment" appears repeatedly in *Beck*, in my view it is but a shorthand reference to exactly the same class of activities described in the *Ellis* test. Had the Supreme Court adopted a more restrictive test in *Beck*, I doubt that it would have reiterated the *Ellis* formulation as its concluding paragraph. *See* 487 U.S. at 762–63, 108 S.Ct. at 2657–58. To my ear, moreover, the language of CWA's policy— "activities or projects normally or reasonably undertaken by the Union to represent the employees in its bargaining units with respect to their terms and conditions of employment"—sounds like the very definition of the term "collective bargaining." In fact, section 8(d) of the National Labor Relations Act defines collective bargaining in part as "confer[ring] in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d) (1988).

Nor do I think that *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), will sustain the court's conclusion that CWA's notice provided " 'potential objectors' " with insufficient information. Maj. Op. at 1379–81 (quoting *Hudson*, 475 U.S. at 306, 106 S.Ct. at 1075–76). Although I agree with the proposition that potential objectors to a union security clause must always receive "sufficient" information about their rights, *see* Maj. Op. at 1379 n. 6, the issue before us is *what* constitutes sufficient information. *Hudson* answered this question only with respect to nonunion employees *who have already qualified for a reduced agency fee*, addressing the amount of information they need to determine whether to object further to the union's specific apportionment of chargeable and noncharge-able activities. *See* 475 U.S. at 306–07, 106 S.Ct. at 1075–76. Here, unlike in *Hudson*, the issue is the amount of information necessary for nonunion employees to determine in the first instance whether to object to paying the union's full agency fee. (Again, no evidence in the record suggests that any non-

union employees lacked sufficient information to understand that by objecting to CWA's full agency fee they would be charged a reduced fee that excluded nonrepresentational expenses.) Were the appellants here challenging the sufficiency of the information that CWA provides at the second stage of its objection policy, when CWA promises objectors "a full explanation of the basis for the reduced fee," J.A. at 74, *Hudson* would be relevant, but this is not appellants' challenge. The court has thus applied *Hudson* to an issue *Hudson* did not consider, demanding far more of the union than *Beck* and *Ellis* require.

I too have some concerns about the adequacy of notice initially given new employees. But because no new employees have claimed that they received inadequate notice at the time of their hire, and because the record does not contain evidence that any new employees have been prejudiced, I would be comfortable affirming on this record. My view would be different if new employees had made such a claim and the facts were not as the union represented at oral argument.

I would affirm the district court in all respects.