Kenneth **ABRAMS**, et al., Plaintiffs,

v.

**COMMUNICATIONS WORKERS OF AMERICA, AFL—CIO,** Defendant.

No. Civ.A. 87–2816–RCL.

United States District Court, District of Columbia.

Sept. 29, 1998.

---

Raymond John LaJeunessee, Jr., National Right to Work Legal Defense Foundation, Springfield, VA, for plaintiffs.

James Bryan Coppess, Communications Workers of America, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment. After consideration of the motions and the oppositions thereto, plaintiffs' motion will be GRANTED in part and DENIED in part, defendant's motion will be GRANTED in part and DENIED in part, and further proceedings will be ordered.

## FACTS

Plaintiffs filed this action on October 19, 1987, alleging that defendant CWA had breached its duty of fair representation under the National Labor Relations Act. On April 16, 1993, this Court granted plaintiffs' motion for summary judgment as to one claim related to arbitration and granted defendant's cross-motion for summary judgment as to all other claims, including the plaintiffs' claims alleging inadequate notice of legal rights and illegal computation of chargeable fees, which claims are again presented by the plaintiffs after a partial reversal and remand by the Court of Appeals. *See Abrams v. Communications Workers of Am.*, 59 F.3d 1373 (D.C.Cir.1995), *reversing in part and affirming in part* 818 F.Supp. 393 (D.D.C.1993).

The Court of Appeals reversed the judgment of this Court as to the notice claim, holding that CWA in fact breached its duty of fair representation by failing to give adequate notice to nonmember employees of their legal right to object to payment of full membership dues. *See Abrams*, 59 F.3d at 1379. The Court of Appeals, however, affirmed most other aspects of this Court's decision, including the finding that CWA's auditing procedures for calculating chargeable expenses were lawful. *See id.* 59 F.3d at 1381. The case was remanded for further proceedings.[1]

---

1. The Court of Appeals decided two additional issues. First, the Court of Appeals directed that this Court certify the plaintiffs as class representatives, as well as directing that a subclass of actual objectors be certified, both of which were done on remand. *See* Order Granting Class Certification, April 18, 1997, *Abrams v. Communications Workers of Am.*, 818 F.Supp. 393 (D.D.C. 1993). Second, the Court of Appeals affirmed the judgment that mandatory arbitration of objections to fees violated the CWA's duty of fair representation. *See Abrams*, 59 F.3d at 1382.

Although the Court of Appeals' order of remand only explicitly called for further consideration of the notice issues relating to new employees (which issues are now moot), the Court of Appeals' reversal on the notice issue implicitly requires this Court to enter judgment for the plaintiffs on that issue and order an appropriate remedy, as well as apply the law as clarified by the Court of Appeals to plaintiffs' computation claim, which tasks are the objective of today's decision.

On remand, the parties have again filed cross-motions for summary judgment, with the focus now narrowed to the notice and computation claims. For the reasons set forth below, the Court will grant the plaintiffs' motion for partial summary judgment on the issue of notice and will grant partial summary judgment in favor of the defendant on the now undisputed issue of notice to new employees. On the more contentious computation claim, the Court will deny plaintiffs' motion for partial summary judgment as to liability and order further proceedings to determine the legality of CWA's definition of chargeable expenditures for purposes of calculating agency fees.

## DISCUSSION

Section 8(a)(3) of the National Labor Relations Act permits an employer and a union to enter into an agreement making the union the collective bargaining representative of all employees, including those who choose not to become full members of the union. *See* 29 U.S.C. § 158(a)(3); *Communications Workers of America v. Beck,* 487 U.S. 735, 745, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988); *Abrams,* 59 F.3d at 1377. The union may charge all employees, both members and nonmembers, "agency" fees to cover the costs of representation, but these fees must be limited to those union expenditures "germane to collective bargaining, contract administration, and grievance adjustment." *Beck,* 487 U.S. at 745, 108 S.Ct. 2641; *Abrams,* 59 F.3d at 1379. This limited contribution ensures that employees who elect not to join the union are not forced to lend financial support to union activities or causes with which they may not agree, while it simultaneously protects the union and its members from "free-riding" nonmembers who would stand to benefit from the union's representation in collective bargaining matters without bearing a fair share of the substantial costs incurred in the course of such representation. *See Beck,* 487 U.S. at 749–54, 108 S.Ct. 2641.

The union's status as an exclusive bargaining representative under section 8(a)(3) imposes upon the union a duty of fair representation. This duty " 'includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " *Abrams,* 59 F.3d at 1377 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). An employee claiming that his union has breached its duty of fair representation must demonstrate that the union acted in a way that was " 'arbitrary, discriminatory, or in bad faith.' " *Id.* (quoting *Vaca,* 386 U.S. at 190, 87 S.Ct. 903). Using this standard, the Court finds pursuant to the Court of Appeals' mandate that CWA breached its duty of fair representation by providing plaintiffs with unlawful notice of their legal right to object to payment of full membership dues. The Court will order further proceedings to adjudicate the legality of CWA's computation of the advance reduction made to objecting employees.

### I. Notice

Plaintiffs challenge the legality of the notice provided annually by CWA, from 1987 through 1995, to all employees by means of the union newsletter.[2] That notice provided in part:

"Under the Communications Workers of America policy on agency fee objections, employees who are not members of the Union, but who pay agency fees, may request a reduction in that fee based on their objection to certain kinds of Union expenditures....

The policy provides an objection period each year during May, followed by a reduction in the objector's fee for the twelve months beginning with July and running through the following year.

Briefly stated, CWA's objection policy works as follows:

1. The agency fee payable by objectors will be based on the Union's expenditures for those activities or projects normally or reasonably undertaken by the Union to represent the employees in its bargaining units

2. The union also mails a copy of the notice to anyone who inquires about the objection policy.

with respect to their terms and conditions of employment."

*Abrams,* 59 F.3d at 1379 (emphasis removed).

The Court of Appeals held this notice to be inadequate because its definition of chargeable expenditures was not limited to those costs "germane to collective bargaining, contract administration, and grievance adjustment," and because it failed to convey to nonmembers that their right to object was a legal one, not merely a privilege granted by CWA's policy. *See Abrams,* 59 F.3d at 1379. According to the Court of Appeals, the phrase "with respect to their terms and conditions of employment" was more broad than "germane to collective bargaining, contract administration, and grievance adjustment" and therefore failed to adequately inform nonmembers of precisely which union expenditures they could and could not be charged for. *See id.* 59 F.3d at 1379–80. This inadequate notice, the Court of Appeals held, violated the union's duty of fair representation under the NLRA, as interpreted by the United States Supreme Court. *See id.*

On remand, therefore, the primary issue before the Court with regard to the notice claim is that of remedy. Plaintiffs ask the Court for declaratory judgment on the notice claim, as well as nominal damages, retroactive notice, and an opportunity to object to full payment of fees for each fee year in which the notice originally given was inadequate.[3] Pursuant to the Court of Appeals' mandate, the Court finds that declaratory judgment in favor of the plaintiffs is appropriate. The Court will also grant plaintiffs' request for nominal damages and order CWA to prepare retroactive notice for each of the years in which notice was inadequate and to allow all class members who were employees during those years an opportunity to retroactively object to payment of full fees. Those class members who object shall be entitled to a refund of all nonchargeable expenditures for the relevant fee year.

### A. *Declaratory Judgment*

■ The Court agrees with the plaintiffs that, under the law as stated by the Court of Appeals, CWA's notice was deficient for all fee years from 1987 through 1995 insomuch as it defined chargeable expenditures too broadly and failed to inform nonmember employees that their right to object to payment of full membership dues was a right provided by law and not merely by the good graces of CWA. *See Abrams,* 59 F.3d at 1378–80. Consequently, pursuant to the Court of Appeals' mandate, judgment will be entered in favor of the plaintiffs declaring that the notice procedure used by CWA from 1987 through 1995 was unlawful.

### B. *Nominal Damages*

■ Second, each plaintiff is entitled to nominal damages in the amount of one dollar for each fee year between 1987 and 1995 in which he or she was a nonmember employee subject to CWA's objection policy. As explained by the Court of Appeals: "The term nominal damages means a trivial sum—usually one cent or one dollar—awarded to a plaintiff whose legal right has been technically violated but who has proved no real [pecuniary] damage." *Chesapeake & Potomac Tel. Co. v. Clay,* 194 F.2d 888, 890 (D.C.Cir. 1952). CWA's failure to give plaintiffs adequate notice of their right to object to full payment of fees "technically" injured the plaintiffs by denying them the fair representation to which they are entitled under the NLRA. Plaintiffs have not proven any pecuniary injury from the unlawful notice, nor could they, because the injury caused by the inadequate notice was essentially a lack of information. Each nonmember was still able to object or not object based on the notice that was in fact given, and many nonmembers, including the named plaintiffs, did object. Nevertheless, the plaintiffs were injured by having to make the decision to object or not object based on unlawful and inadequate notice of their rights. That inju-

---

**3.** Federal Rule of Civil Procedure 54(c) states that "every final judgment shall grant the relief to which the party is entitled, even if the party has not demanded such relief in the party's pleadings." Therefore, the Court will consider each of the three forms of relief that the plaintiffs have requested on remand, regardless of whether they appeared in the original complaint.

ry was procedural, rather than pecuniary,[4] and nominal damages are appropriate.

Notably, plaintiffs' injury is very similar to the violation of due process found in objection notice cases involving state action, such as *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), for which other courts have found nominal damages to be an appropriate remedy. *See Hohe v. Casey,* 956 F.2d 399, 415–16 (3d Cir.1992); *Laramie v. County of Santa Clara,* 784 F.Supp. 1492, 1501 (N.D.Cal. 1992); *Jordan v. City of Bucyrus,* 739 F.Supp. 1124, 1128 (N.D.Ohio 1990). Although this is not a constitutional case, the procedural nature of the injury in both contexts is the same, and nominal damage are appropriate in each.

### C. *Retroactive Notice and Objection*

■ Finally, plaintiffs claim that an opportunity to object retroactively, after proper notice, is necessary to fully remedy CWA's breach of its duty of fair representation. The Court agrees.

Given the Court of Appeals' clear holding that CWA breached the duty it owed to the employees by providing inadequate notice, any remedy intended to make the plaintiffs whole must provide them, albeit belatedly, with the notice required by law 'and the corresponding opportunity to exercise their legal right to object to payment of full membership dues. This remedy comes closest to recreating the situation that would have existed had no breach of duty occurred, and furthermore it is consistent with the position of the National Labor Relations Board on the appropriate remedy for violations of this type. *See Rochester Mfg.,* 323 N.L.R.B. No. 36, 154 L.R.R.M. (BNA) 1249, 1252–53 (March 12, 1997).

Using the remedy fashioned by the NLRB in *Rochester Mfg.* as a model, the Court will order CWA to give all class members adequate notice nunc pro tunc of their legal right to object to payment of agency fees for expenditures not legally chargeable under the NLRA and applicable Supreme Court precedent. The notice must state clearly that the right to object is a legal one. The notice shall also define chargeable expenditures as those "germane to collective bargaining, contract administration, and grievance adjustment." *Beck,* 487 U.S. at 745, 108 S.Ct. 2641; *Abrams,* 59 F.3d at 1379.

In addition to receiving the new notice, all class members shall have the opportunity to object to payment of full membership fees. The time period for submitting objections shall not be less than one month from receipt of the new notices. With respect to all class members who choose to object to payment of full fees, CWA shall process the objections just as it would otherwise have done. In calculating the percentage of the standard fee that may be charged to objecting nonmembers, CWA shall use the percentage of national union expenditures categorized as noncharageable from the fiscal year preceding the fee year at issue. For example, if a class member chooses to object to payment of the full fee for the fee year July. 1990 through June 1991, CWA shall calculate the reduction (in this circumstance, a refund) using the percentage of chargeable expenditures from the fiscal year ending December 31, 1989. Finally, the refund will include interest accruing from day one of the fee year, when the advance reduction normally would have been distributed to objecting nonmembers. This calculation will put the objecting class member in as near as possible the same position as if he or she had in fact objected in the normal course of affairs after receiving proper notice.

CWA shall also provide each objecting member with the usual letter of explanation from the union's secretary-treasurer, including the detailed list of chargeable and nonchargeable expenditures. The objecting class members will maintain their right to challenge the calculation of the fee reduction.

---

4. Phrased another way, the right to lawful notice is "absolute," in the sense that violation of the right is not dependent on any showing of pecuniary loss. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Charles T. McCormick, Handbook on the Law of Damages* 86 (West 1935). · Thus, as in *Carey,* plaintiffs are entitled to nominal damages. *Compare Carey,* 435 U.S. at 266, 98 S.Ct. 1042; *Hohe v. Casey,* 803 F.Supp. 1012, 1018 (M.D.Pa.1992) (on remand, awarding nominal damages for defective notice).

The time period for such challenges will be the usual thirty-day period starting on the date of receipt of the refund check and explanatory letter. These challenges shall be adjudicated according to the objection procedure currently used by CWA since the decision by this Court that the mandatory referral to binding arbitration was a breach of the union's duty of fair representation, *see Abrams v. Communications Workers of Am.*, 818 F.Supp. at 406–07, subject of course to any modification ordered after further proceedings before this Court.

In response to CWA's concerns that some class members may now object even though they would not have objected had they received proper notice originally, the Court again agrees with the NLRB's assertion in *Rochester Mfg.* that the burden of such uncertainty must fall on the wrongdoer. *See Rochester Mfg.*, 154 L.R.R.M. at 1253. Here, any lesser remedy would leave plaintiffs without adequate remedy for the injury caused by the illegal notice.

## II. Computation

■ Second, plaintiffs have moved for partial summary judgment on the issue of CWA's liability for illegally computing the amount of expenditures chargeable to objecting employees. Plaintiffs claim that CWA unlawfully charged class members for nonchargeable activities, arguing essentially that CWA's overbroad definition of chargeable expenditures infected its lists of chargeable and nonchargeable expenses as well as its notice policy.

Defendant counters that plaintiffs' computation claim was rejected in this Court's initial disposition of this action, that plaintiffs failed to raise this particular aspect of the computation issue on appeal, and that they received no favorable ruling from the Court of Appeals that would have revived the issue. Consequently, defendant argues, the issue is not properly before the Court at this time.

The defendant is correct that this Court rejected the computation claim when it dismissed plaintiffs' claims on summary judgment in 1993. However, that decision was predicated on an understanding of *Beck, Ellis,* and other relevant case law as supporting a definition of chargeable expenditures that was substantively, whether or not substantially, more broad than the definition articulated by the Court of Appeals. In essence, this Court found the applicable standard to be that set forth in *Ellis,* which included " 'not only the direct costs of negotiating and administering a collective-bargaining contract and settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.' " *Abrams,* 818 F.Supp. at 402 (quoting *Ellis,* 466 U.S. at 448, 104 S.Ct. 1883). On appeal, the Court of Appeals clarified that the Supreme Court's decision in *Beck,* while relying largely upon the prior decision in *Ellis,* actually narrowed in some degree the permissible definition of chargeable expenditures from that just quoted to one that includes only those activities " 'germane to collective bargaining, contract administration and grievance adjustment.' " *Abrams,* 59 F.3d at 1379–80 (quoting *Beck,* 487 U.S. at 745, 108 S.Ct. 2641). While this difference in language may appear slight, it is more than merely a matter of semantics, and this Court is obligated to apply the law as decided by the Court of Appeals.[5]

It is also true that the plaintiffs did not emphasize this particular objection to the computation on appeal. Instead, the plaintiffs focused their attack on the auditing procedures used by CWA to calculate the proportion of chargeable and nonchargeable expenditures, an attack which the Court of Appeals found unpersuasive, as did this Court in 1993. Nevertheless, plaintiffs' brief on appeal did refer to the computation claim at least implicitly in their objections to the unlawful "exaction" of fees and in their more general claim that CWA was operating its entire agency fee policy based on a defini-

**5.** Although this Court is not entirely convinced that *Beck* must be read as narrowing the standard set forth in *Ellis,* the Court of Appeals' decision is binding at least for purposes of this action under the law of the case doctrine. *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice and Procedure* § 4478 (1981 & 1998 Supp.).

tion that was more broad than that allowed by law. The Court of Appeals affirmed this Court's finding that CWA's auditing procedures were lawful, but the appellate court did not address the definition of chargeable expenditures in the computation context, perhaps because it had clarified earlier in its opinion that the proper standard was the narrow "germane to collective bargaining" definition. In the opinion of this Court, the narrowing clarification of that standard implicitly, but necessarily, requires that this Court reconsider plaintiffs' computation claims using the correct standard.

■ Whether or not CWA's list of chargeable and nonchargeable expenditures is inconsistent with the narrow *Beck* standard is a question that will be more appropriately decided after discovery is completed and the parties have an opportunity to address the listed expenditures individually and brief the Court on whether they are "germane to collective bargaining, contract administration, and grievance adjustment." Therefore, the Court will order further proceedings on the computation claim, the details of which will be set forth in a separate order.

III. *Notice to New Employees*

Finally, defendant has moved for summary judgment on plaintiffs' claim that CWA fails to provide adequate notice of objection rights to new employees. Plaintiffs do not oppose entry of summary judgment on this claim, and the issue appears to have become moot. For those reasons, defendant's motion will be granted in part and denied in part and judgment entered in its favor on the issue of notice to new employees. Otherwise, defendant's suggestion that plaintiffs claims should be dismissed is rejected and judgment will be entered for the plaintiffs as explained above.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for partial summary judgment will be GRANTED in part and DENIED in part, defendant's motion for summary judgment will be GRANTED in part and DENIED in part, and further proceedings will be ordered to adjudicate the computation claims. A separate order shall issue this date.

## ORDER AND JUDGMENT

This case comes before the Court on plaintiffs' motion for partial summary judgment and defendant's cross-motion for summary judgment. Upon consideration of the motions and the oppositions thereto, and for the reasons stated in the Memorandum Opinion issued this date:

1. Plaintiffs' motion for partial summary judgment is GRANTED in part and DENIED in part. The Court GRANTS plaintiffs' motion as to the claim that CWA failed to give nonmembers adequate, lawful notice of their legal right to object to payment of full membership dues. The Court DENIES the motion as to the claims that CWA charged objecting nonmembers for nonchargeable expenses;

2. Judgment is hereby ENTERED declaring that CWA breached its duty of fair representation by failing to give adequate notice to nonmember employees of their legal right to object to payment of full membership dues;

3. As explained in the Memorandum Opinion issued this date, CWA is hereby ORDERED to provide nonmember employees an opportunity to object nunc pro tunc, after receiving lawful notice, to payment of full membership dues for each of the fee years in which adequate notice was not given, from 1987 through 1995. Objecting employees shall be provided with the standard letter of explanation and detailed list of chargeable and nonchargeable expenditures. Any objecting employee shall then be entitled to challenge any activity listed as chargeable, pursuant to the ordinary objection procedure currently used by CWA, subject to any subsequent modification by order of this Court; and

4. CWA is further ORDERED to pay $1.00 in nominal damages to each member of the plaintiff class for each year in which the class member received unlawful notice.

Furthermore:

5. Defendant's cross-motion for summary judgment is GRANTED in part and DENIED in part; and

6. Judgment is ENTERED for the defendant, dismissing with prejudice the claim that CWA does not provide to new employees adequate notice of their legal right to object to the payment of full dues; otherwise, judgment is denied to defendant.

Furthermore:

7. The parties are ORDERED to conduct a meet-and-confer conference within 15 days of the filing of this order to prepare a proposed schedule for further proceedings in this case. The parties shall file a report with the proposed schedule within 10 days of the meet-and-confer conference. If the parties cannot agree, each shall submit a proposed schedule with a supporting memorandum within 15 days of the conference; and

8. The parties shall, at the meet-and-confer conference, discuss a proposal for how plaintiff class members will be identified in order to process the award of nominal damages and implement the retroactive notice procedure. The proposal shall be included in the meet-and-confer report.

SO ORDERED.