05-6773-cv
Seidemann v. Bowen

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: December 20, 2006                   Decided: August 1, 2007
On Petition for Rehearing: Decided August 27, 2007    Amended: August 28, 2007)

Docket No. 05-6773-cv

--------------------------------------------------------------------x

DAVID SEIDEMANN,

         *Plaintiff-Appellant*,

   -v.-


BARBARA BOWEN, PERSONALLY AND IN HER CAPACITY
AS PRESIDENT OF THE PSC/CUNY (PROFESSIONAL STAFF
CONGRESS/CITY UNIVERSITY OF NEW YORK), AND
PSC/CUNY[*]

         *Defendants-Appellees*,
--------------------------------------------------------------------x

Before:  HON. ROSEMARY S. POOLER,
           HON. ROBERT D. SACK,
           HON. PETER W. HALL,
                               *Circuit Judges*.


     Plaintiff-Appellant David Seidemann appeals from an order of the United States District Court for the Eastern District of New York (Bloom, *M. J.*) granting summary judgment in favor of Defendants. We hold that a union may not require agency fee payers to object annually to expenditures unrelated to the collective bargaining process. REVERSED and REMANDED.

                                   Phineas E. Leahey, Davis Polk & Wardwell, New York, New York, for Plaintiff-Appellant.

---

[*] We direct the Clerk of Court to amend the official caption as noted above.

James R. Sandner, (Christopher M. Callagy, Bryan D. Glass, *on the brief*), New York, New York, for Defendant-Appellee.

HALL, *Circuit Judge*:

Plaintiff David Seidemann is a tenured professor at Brooklyn College/City University of New York ("CUNY") and a nonunion employee, or "agency fee payer." Defendant Professional Staff Congress of the City University of New York ("PSC/CUNY") is a public-sector union designated as the exclusive collective bargaining representative for certain CUNY employees like Seidemann. Barbara Bowen is the president of the PSC/CUNY.

In 2002, Seidemann filed written objections with the union seeking to reduce his agency fee for charges he alleges are not related to the collective bargaining process. He brought this action against Defendants alleging that PSC's agency fee procedures are inconsistent with the First Amendment and the duty of fair representation. Several times during pretrial litigation the union revised the procedures by which nonmembers may make such objections, and because of admitted past violations, PSC refunded Seidemann's agency fees for the 2001-2004 fiscal year, with interest. Thereafter, the parties and the court addressed only the agency fee procedures adopted on April 30, 2003.

According to the April 2003 procedures, prior to the annual objection period PSC must provide agency fee payers with information regarding the previous fiscal year's rebatable expenditures. Pursuant to this provision, PSC annually sends agency fee payers a notice letter with a copy of the agency fee procedure outlining the objection procedures, and agency fee payers have between May 1 and May 31 to mail their objections.[1] Objecting fee payers are then

---

[1] As discussed below, there is a question of fact as to the actual content of PSC's notice letter.

2

entitled to an advanced rebate for the projected pro rata amount of expenditures not related to the collective bargaining process. If the objector is dissatisfied with the amount of the advance rebate or disputes whether a category of expenditures is a component of collective bargaining, the objector may appeal the determination in writing to the union president within thirty-five days and the union will submit the matter to a neutral arbitrator for an "expeditious" hearing.

After Seidemann filed his third amended complaint, the parties cross-moved for summary judgment. The Magistrate Judge[2] granted summary judgment in favor of Defendants and dismissed the action.

Seidemann makes several arguments on appeal. First, he asserts the union's requirement that objections be renewed annually and its refusal to accept continuous objections violates the First Amendment. Seidemann further challenges the requirement that persons in his position identify the percentage of political and ideological expenditures in dispute as a precondition to arbitration, and he objects to the sufficiency of the notice given. Seidemann also asserts the district court erred in holding some of his claims to be moot. Finally, he insists the court erroneously dismissed his suit without addressing his claim asserting breach of duty of fair representation.

## I. DISCUSSION

### A. Requirements for Objecting Agency Fee Payers

Generally, employees who do not choose to join the union must still pay union dues; these employees are referred to as "agency fee payers." For such employees, the employer

---

[2] The parties consented to adjudication by the Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

deducts agency fees equivalent to the amount of union dues from their paychecks and remits those fees to the union. Although fee payers must pay union fees even if they are not union members, they are entitled to notice of the union's expenditures not related to the collective bargaining process—i.e., expenditures for items political and ideological in nature—and may obtain a refund of their pro rata share of those expenditures by filing timely objections with the union. *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 524 (1991); *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 303 (1986).

So-called "agency-shop" arrangements that compel all employees within a bargaining unit to pay agency fees as a condition of employment are permitted in light of "the government's interest in promoting labor peace and avoiding the free rider problem that would otherwise accompany union recognition." *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 511, 520-21 (1991); *see also Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 472 (1997) (citing *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977)). "However, agency-shop arrangements in the public sector raise First Amendment concerns because they force individuals to contribute money to unions as a condition of government employment." *Davenport v. Wash. Educ. Ass'n*, 127 S.Ct. 2372, 2377 (2007). To safeguard employees' constitutional rights, therefore, unions must allow employees who do not wish to be union members to be able to object to the payment of portions of the union fee that are not related to collective bargaining. *See Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 768-69, 774 (1961) (noting such employees must "identif[y] themselves as opposed to political uses of their funds"). The Supreme Court specifically addressed union dues collection in the public sector in *Abood v. Detroit Board of Education.*, 431 U.S. 209, 235-36 (1977), holding that it is unconstitutional for a union to collect sums from

4

dissenting employees to support political and ideological causes not germane to the union's duties as a collective-bargaining agent. *See also Ellis v. Bhd. of Ry., Airline, & S.S. Clerks*, 466 U.S. 435, 447 (1984) (same); *Bhd. of Ry & S.S. Clerks v. Allen*, 373 U.S. 113, 118-19 (1963) (same). To achieve the appropriate balance between constitutional and unconstitutional collections, the union must "devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." *Abood*, 431 U.S. at 237.

*Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 303 (1986), established three requirements for the procedures unions put in place to handle public employees' objections to fee allocations intended to minimize the risk that objectors' First Amendment rights will be burdened. Principally, the procedures must "minimize the risk that nonunion employees' contributions might be used for impermissible purposes." *Id.* at 309. Second, they must provide adequate "information about the basis for the proportionate share" of the union expenses fee payers must pay. *Id*. at 306; *see also id*. at 309 (reiterating that although the nonmember employee has the "burden of raising an objection, . . . the union retains the burden of proof" with respect to apportionment and notification to the fee payers of the appropriate payment); *accord Allen*, 373 U.S. at 122 ("Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion."). Finally, a union procedure must "provide for a reasonably prompt decision by an impartial decisionmaker" adjudicating fees that are in dispute. *Hudson*, 475 U.S. at 307.

Procedural safeguards prevent "compulsory subsidization of ideological activity . . . without restricting the Union's ability to require every employee to contribute to the cost of collective-bargaining activities." *Id.* at 302 (internal quotation marks omitted). Although the government interest in a stable labor force is strong, the fact that constitutional rights are protected by the First Amendment requires the union procedures be carefully tailored to minimize the risk of burdening employee's First Amendment rights. *Id.* at 302-03 (procedures must "minimize the infringement"). Nonunion employees, "whose First Amendment rights are being affected[] must have a fair opportunity to identify the impact of the governmental action on [their] interests and to assert a meritorious First Amendment claim." *Id.* at 303.

It is in light of these principles and requirements that we examine the agency fee procedures at issue here. We conclude that PSC's procedures for dealing with agency fee payers' objections fail to minimize the risk that objectors' First Amendment rights will be burdened and are therefore unconstitutional. *Id*.

## B. Annual Objection Procedures

This Circuit has mandated that unions use "narrowly drawn" objection procedures to protect the First Amendment rights of agency fee payers, while allowing unions and government to pursue their needs in "establishing a rational system to consummate labor negotiations." *Andrews v. Educ. Ass'n of Cheshire*, 829 F.2d 335, 339 (2d Cir. 1987). Although we have not required that objection procedures be the "least restrictive" means available, they must, nonetheless, be "narrowly drawn" to comply with the strictures imposed by *Hudson*. *Andrews*, 829 F.2d at 339-40; *cf. Price v. Int'l Union, UAW*, 927 F.2d 88, 92 (2d Cir. 1991) (distinguishing cases involving private employee unions from public sector union cases, where constitutional

concerns warrant the *Hudson* safeguards). The issue of principal concern to us in this case is whether requiring agency fee holders to object annually to payment of expenses other than for costs of collective bargaining meets this mandate.

The Fifth Circuit addressed the issue in *Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 515-17 (5th Cir. 1998), and held that an annual objection requirement failed to meet the *Hudson* standards. Acknowledging that other cases, discussed below, had decided whether annual objections were permissible only as related to a union's duty of fair representation, the Fifth Circuit instead examined the requirement to ensure that it followed *Hudson*'s admonition that a union "adopt those reasonably practicable procedures that least interfere with an objecting employee's exercise of his First Amendment rights." *Shea*, 154 F.3d at 517. "[T]he procedure that least interferes with an employee's exercise of his First Amendment rights is the procedure by which an employee can object in writing on a continuing basis." *Id.* at 515. The union in *Shea,* moreover, had proffered no legitimate reason for requiring annual objections. *Id.* "[I]n the absence of such a reason . . . the annual written objection procedure is an unnecessary and arbitrary interference with the employees' exercise of their First Amendment rights." *Id.*; *see also Lutz v. Int'l Ass'n of Machinists & Aerospace Workers*, 121 F. Supp. 2d 498, 506 (E.D. Va. 2000) (analyzing the propriety of annual objection requirements under the First Amendment and concluding that because such requirements burden the First Amendment rights of nonmembers while offering no legitimate benefit to the union, they are not carefully tailored to minimize the risk that objectors' First Amendment rights will be burdened and are thus invalid).[3]

---

[3] The Seventh Circuit also addressed annual objection requirements, albeit only briefly, in considering overall procedures established by a public teachers' union. *Tavernor v. Ill. Fed'n of Teachers*, 226 F.3d 842, 848-49 (7th Cir. 2000). The court stated that, in addition to other

As did the court in *Shea*, we note that two other Circuits have reached a contrary conclusion with respect to annual objections. The Sixth Circuit merely observed that *Hudson* had placed the burden of objection on the employee and concluded therefore that the annual objection procedure was not "unreasonable." *Tierney v. City of Toledo*, 824 F.2d 1497, 1506 (6th Cir. 1987). The D.C. Circuit also upheld an annual objection requirement in *Abrams v. Commc'ns Workers of Am.*, 59 F.3d 1373, 1381-82 (D.C. Cir. 1995), stating simply that the annual objection procedure was "permissible" in light of *Street's* directive that "dissent is not to be presumed." 59 F.3d at 1382 (quoting *Street*, 367 U.S. at 774) (internal quotation marks omitted). The plaintiffs in *Abrams* had asserted that the annual objection procedure violated the union's duty of fair representation. The *Abrams* court did not specifically base its holding on the union's providing fair representation, but by the same token, it did not discuss First Amendment requirements as elucidated by *Hudson*.

We are persuaded by the Fifth Circuit's analysis in *Shea*, which is most in line with this Circuit's jurisprudence regarding agency fee procedures and our reading of Supreme Court precedent. *See Shea*, 154 F.3d at 515-17; *see also Tavernor v. Ill. Fed'n of Teachers*, 226 F.3d 842, 848-49 (7th Cir. 2000); *Lutz*, 121 F. Supp. 2d at 506. Although the Supreme Court in *Street*, 367 U.S. at 774, placed the burden of making an initial objection on the employee, nothing in *Street* or the subsequent decisions of the Supreme Court suggest that merely because

_____

onerous and lengthy requirements for objection, which can take up to a year to complete, the union "requires objections to be renewed annually, which places an additional burden on objectors." *Id.* at 849. The *Tavernor* court, citing *Shea*, commented that because of this additional burden: "No sooner does the objector complete one round than, like Sisyphus with his rock, he must begin anew with another." *Id.* The court asserted the emphasis should be on "minimiz[ing] the burden on the objectors' First Amendment rights." *Id.*

an employee must initially make his objection known, a union may thereafter refuse to accept a dissenter's notice that his objection is continuing. *See Davenport*,127 S.Ct. at 2379 (stating that with respect to *Street's* requirement that dissent is not to be presumed, "[w]e meant only that it would be improper for a court to enjoin the expenditure of the agency fees of all employees, including those who had not objected, when the statutory or constitutional limitations established in those cases could be satisfied by a narrower remedy."); *see also Shea*, 154 F.3d at 515 ("Nothing in [*Street* or subsequent cases] requires *repeated* objection."). The fact that employees have the responsibility of making an initial objection does not absolve unions of their obligation to ensure that objectors' First Amendment rights are not burdened. *Davenport*, 127 S.Ct. at 2379; *Hudson*, 475 U.S. at 303; *Andrews*, 829 F.2d at 339.

Here, PSC's annual objection requirement burdens employees exercising their constitutionally protected right to object, and the union has proffered no legitimate need for disallowing continuing objections. *See Shea*, 154 F.3d at 515. While PSC suggests that it wants to take advantage of inertia on the part of would-be dissenters who fail to object affirmatively, thus preserving more union members, that rationale cannot carry the day in light of *Hudson*'s and *Andrews*'s requirements that procedures for objecting be drawn narrowly. *See Shea*, 154 F.3d at 515 (noting the union had asserted no legitimate interest and therefore the "unduly cumbersome" annual objection requirement "serves only to further the illegitimate interest of the [union] in collecting full dues from nonmembers who would not willingly pay more than the portion allocable to activities germane to collective bargaining"). We hold the annual objection requirement imposed by PSC in this case is an unnecessary burden on an employee's exercise of First Amendment rights. *See Hudson*, 475 U.S. at 303, 309.

9

## C. Identification of Particular Expenditures

Seidemann asserts the union's requirement that agency fee payers object to the specific percentage of expenditures in dispute as a pre-condition to arbitration is also unconstitutional. PSC requires that in order for an objector to obtain arbitration of a disputed fee, "s/he must indicate to the union local president the percent of agency fees that s/he believes is in dispute." We agree that this is improper.

The Supreme Court has specifically and consistently rejected the notion that dissenters must object with particularity. The first suggestion that general objections to union fees would be sufficient to preserve a dissenter's rights came in *Allen*, 373 U.S. at 118, which stated that "[i]t would be impracticable to require a dissenting employee to allege and prove each distinct union political expenditure to which he objects; it is enough that he manifests his opposition to any political expenditures by the union." Although *Allen* refers to the sufficiency of an objection necessary to preserve the employee's right to sue for a First Amendment violation, the Court in *Abood* furthered *Allen's* holding and specifically prevented unions from requiring particularized objections. *Abood*, 431 U.S. at 239 n.39 & n. 40, 241 (noting any implication in *Street* that employees were required to voice particularized objections was rejected in *Allen*). The Court reiterated in *Air Line Pilots Association v. Miller*, 523 U.S. 866, 878 (1998), that "when pursuing the union's *internal* remedies, an objector may preserve the right to subsequent judicial relief without 'indicat[ing] to the Union the *specific* expenditures to which he objects.'" (quoting *Abood*, 431 U.S. at 241) (emphasis in *Abood*). Moreover, requiring particularized objections to preserve an objector's rights to dissent places an additional unnecessary burden on objectors in violation of the Court's holding in *Hudson*. 475 U.S. at 303; *see also Andrews*, 829 F.2d at 339.

10

Accordingly, PSC's requirement that agency fee payers must assert particularized objections as a sine qua non to obtain review by an impartial decision-maker violates Seidemann's constitutional right to dissent.

### D. Sufficiency of Notice

Seidemann contends that the notice the union provided him was insufficient under *Hudson* because it does not allow would-be dissenters "to gauge the propriety of the union's fee." *Hudson*, 475 U.S. at 306. Seidemann makes two arguments with respect to the notice received. First, he asserts the notice fails to provide sufficient information to fee payers. Second, he claims the notice either mischaracterizes information or conceals it from agency fee payers. We address the notice letter first.

Seidemann argues PSC violates *Hudson's* notice requirement because PSC's notice letter fails to provide potential fee payers with information about the union's finances. PSC contends the notice letter meets *Hudson* requirements because it directs fee payers to the union's website, which contains the necessary financial information. The district court concluded that a notice letter directing potential fee payers to a union website that contains the required financial information on union expenditures is sufficient under *Hudson*. The record, however, contains two notice letters, and it is unclear which notice letter the court relied on to reach its determination that the letter was sufficient under *Hudson*. There is a notice letter that directs potential fee payers to the union website, dated June 20, 2003, and a notice letter dated April 15, 2004, that neither provides financial information nor directs potential fee payers to a union website. Because the record contains two inconsistent versions of the letter, there remains a

11

factual dispute as to its contents. The grant of summary judgment on this point was therefore inappropriate.

Seidemann next contends the financial information available to agency fee payers mischaracterizes expenditures because it lists political and ideological expenses under innocuous, seemingly appropriate, categories of expenses such as "office supplies," and then charges fee payers for 100% of those expenditures. As evidence that the union concealed information from potential fee payers, Seidemann points to detailed budget reports sent to union delegates that contain "critical information" about expenditures that was withheld from agency fee payers.

First, we reiterate that there is a factual issue with respect to the contents of the letter. However, because that factual dispute appears to be limited to whether or not the letter directs potential fee payers to the union website, we will address Seidemann's claims here to help clarify the issue.

Seidemann's argument on this point conflates the requirements of *Hudson* and those of *Lehnert v. Ferris Faculty Association*, 500 U.S. 507 (1991). While in *Hudson* the Supreme Court addressed the adequacy of the notice to fee payers, in *Lehnert*, the Supreme Court articulated the requirements for evaluating the propriety of a union's determinations with respect to what could and could not be charged: "chargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Id.* at 519. There is a "clear distinction between the adequacy of a union's notice, addressed by the Supreme Court in *Hudson,* and the propriety of a union's chargeability determinations, considered separately by the Supreme Court

12

in *Lehnert."* *Jibson v. Michigan Educ. Ass'n-NEA,*, 30 F.3d 723, 730 (6th Cir. 1994); *accord* *Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 813-14 (9th Cir. 1997); *Hudson v. Chi. Teachers Union*, 922 F.2d 1306, 1314 (7th Cir.1991) (holding plaintiffs "mistakenly equate[] the adequacy of the notice with the accuracy of the fee assessment" (internal quotation marks omitted)). As the Seventh Circuit stated, "*Hudson* did not contemplate that federal courts would be required, on the basis of the notice, to pass on the legality and accuracy of every element of the fee calculation before any fees could be collected." *Hudson*, 922 F.2d at 1314.

Although PSC's procedure for impartial review of disputed expenditures will require revision, as discussed above, this Court may not at this stage substitute itself for the impartial decisionmaker mandated by *Hudson* and go on to consider disputes regarding the proportion of fees that my be charged. "Of course, the impartial decisionmaker's determination is not the final word on the challenge. *If* the decision is adverse to the plaintiff[], [he] may *subsequently* seek review by a federal court." *Id.* (citing *Hudson*, 475 U.S. at 308 n.21). Thus, to the extent that Seidemann is suggesting that the letter provides insufficient notice of expenditures to allow potential fee payers to make an adequate objection as required by *Hudson*, the district court should consider those claims in the first instance. Indeed, while *Hudson* does not mandate that potential fee payers receive all of the financial information union delegates may receive, the union must provide adequate "information about the basis for the proportionate share" of union dues to allow fee payers to make an accurate objection to the non-chargeable portions of the dues. *Hudson*, 475 U.S. at 306. *Lehnert*, in turn, sets out the parameters for deciding what is and is not chargeable. *Lehnert*, 500 U.S. at 519. Thus, we remand to the district court to ensure the notice letter provides adequate information under *Hudson*. If and when the notice in the letter is

13

deemed adequate, the district court should consider in the first instance the claims arising under

*Lehnert*, as discussed further below.

### E. Mootness

The district court refused to address Seidemann's claims that the agency fee procedures

violate the holding in *Lehnert* because they allow nonmember employees to be charged for

political and ideological expenditures. *See* 500 U.S. at 519. The court concluded that because

PSC had refunded entirely Seidemann's fees for fiscal years 2001 to 2004, "any specific

objections plaintiff may have claimed for [those years] are now moot." Thus, the court did not

address the claim.

The voluntary cessation of allegedly illegal activities can moot a claim only "if the

defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation

will recur and (2) interim relief or events have completely and irrevocably eradicated the effects

of the alleged violation." *Granite State Outdoor Advert., Inc. v. Town of Orange, Conn.*, 303

F.3d 450, 451 (2d Cir. 2002) (per curiam) (quoting *Campbell v. Greisberger,* 80 F.3d 703, 706

(2d Cir. 1996)). Ordinarily, a party's "voluntary cessation of allegedly unlawful conduct . . . does

not suffice to moot a case." *N.Y. Pub. Interest Research Group v. Whitman,* 321 F.3d 316, 327

(2d Cir. 2003) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 174 (2000))

(internal quotation marks omitted). Accordingly, a party "claiming that its voluntary compliance

moots a case bears the formidable burden of showing that it is absolutely clear the allegedly

wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Laidlaw*, 528 U.S. at

190); *see also N.Y. Pub. Interest Research Group*, 321 F.3d at 327 (concluding that although

14

state agency's implementation of changes promised in letter of commitment indicated degree of "good faith," actions were insufficient to "carr[y] the formidable burden of making absolutely clear that the problems identified . . . could not reasonably be expected to recur" (internal quotation marks and citations omitted)).

We conclude that the Union in this case has not met the "formidable burden" of demonstrating that its prior unlawful conduct is unlikely to recur. In fact, Seidemann asserts on appeal that violations have already recurred. We do not address the merits of Seidemann's claims on this point, but we conclude only that the claims are not moot and therefore remand to allow the district court to address in the first instance PSC's determinations regarding which fees may be charged to agency fee payers.

### F. Duty of Fair Representation

Finally, we note that the district court dismissed Seidemann's suit without addressing his state law duty of fair representation claim. On remand the district court must address this issue in the first instance. *See, e.g., Thompson v. County of Franklin*, 15 F.3d 245, 253-54 (2d Cir. 1994) (declining to address res judicata issue in first instance).

### II. CONCLUSION

We hold that PSC's procedures requiring agency fee payers to file annual objections and to specify percentages of expenditures in dispute to obtain arbitration violate Seidemann's First Amendment rights. We further hold that PSC has not demonstrated that its agency fee procedure violations are unlikely to recur. For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for further proceedings. REVERSED AND REMANDED.

15