EUREKA V LLC, Plaintiff,

v.

The TOWN OF RIDGEFIELD, The Board of Selectmen of the Town of Ridgefield, The Board of Finance of the Town of Ridgefield, The Economic Development Commission of the Town of Ridgefield, The Bennett's Farm Development Authority, Barbara Serfilippi in her official capacity as the Town Clerk of the Town of Ridgefield, and The Planning and Zoning Commission of the Town of Ridgefield, Defendants.

No. 3:02 CV 00356 DJS.

United States District Court, D. Connecticut.

Jan. 6, 2009.

Matthew C. Mason, Gregory & Adams, Wilton, CT, for Plaintiff.

Ari J. Hoffman, Barbara M. Schellenberg, Jonathan S. Bowman, Stewart I. Edelstein, Barbara M. Schellenberg, Cohen & Wolf, P.C., Bridgeport, CT, Monte E. Frank, Cohen & Wolf, Thomas Wylie Beecher, Collins, Hannafin, Garamella, Jaber & Tuozzolo, Danbury, CT, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Eureka V LLC ("the Plaintiff"), brings this action against the Town of Ridgefield ("the Town"), the Board of Selectmen of the Town of Ridgefield ("the Board of Selectmen"), the Board of Finance of the Town of Ridgefield ("the Board of Finance"), the Economic Development Commission of the Town of Ridgefield ("the Economic Development Commission"), the Bennett's Farm Development Authority ("BFDA"), Bar-

bara Serfilippi ("Serfilippi") in her official capacity as the Town Clerk of the Town of Ridgefield, and the Planning and Zoning Commission of the Town of Ridgefield ("the Planning and Zoning Commission") (collectively, "the Defendants"), to enjoin the Defendants from (1) taking by eminent domain the Plaintiff's real property located in Ridgefield, Connecticut, and (2) implementing the Bennett's Farm Corporate Park Preliminary Project Plan ("the Plan"). The Fourth Count of the Plaintiff's Third Amended Complaint ("the Complaint") alleges that the Defendants violated the Federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("the FHA"). The Defendants now move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") to dismiss the Fourth Count. (Dkt. # 162.) For the reasons set forth herein, the Defendants' motion to dismiss **(dkt. # 162) is DENIED.**

## I. FACTS

The following facts are alleged in the Complaint. The Plaintiff is a Delaware limited liability company whose principal place of business is New York, New York. The Town is a municipal corporation of the State of Connecticut. The Board of Selectmen is the duly elected executive body of the Town. The Economic Development Commission is a commission established by the Town pursuant to Conn. Gen.Stat. § 7–136 and the Town's Charter that is empowered to assist the Town with municipal development projects. BFDA is an authority of the Town that was created on January 9, 2002, pursuant to the Town's Charter and Conn. Gen.Stat. §§ 8–186 *et seq.* The Board of Finance is a board of the Town that is charged with the appropriation of funds. Serfilippi is the duly elected Town Clerk of the Town. The Planning and Zoning Commission is a commission of the Town that is empowered to adopt and amend the Town's zoning regulations.

The Plaintiff, whose principals are experienced developers, acquired approximately 682 contiguous acres of real property in Danbury, Connecticut (sixty-nine acres) and the Town (613 acres) from the IBM Corporation ("IBM"). Of the 613 acres located in the Town, the Town, through its eminent domain powers, seized the 458 acres that are situated north of Bennett's Farm Road ("the North Parcel"). The remaining 155–acre tract is located south of Bennett's Farm Road ("the South Parcel") and is the subject of this action. The court shall refer to the North Parcel and the South Parcel collectively as "the Bennett's Farm Property." The Bennett's Farm Property consists of approximately 370.4 acres zoned as a Corporate Development District ("CDD"), 237.1 acres zoned as Residential 3 Acres ("RAAA"), 2.0 acres zoned as Residential 2 Acres ("RAA"), and 5.9 acres zoned as Residential 1 Acre ("RA"), as defined in the Town's zoning regulations. The entirety of the South Parcel is zoned CDD.

Between 1995 and 1998, IBM publicly marketed the Bennett's Farm Property for sale. In May 1995, upon learning of IBM's plans to sell the Bennett's Farm Property, the Planning and Zoning Commission made a request to the Board of Selectmen that the Town purchase it for open space. Despite this request, the Town never made an offer to IBM to purchase the Bennett's Farm Property. The Plaintiff subsequently acquired the Bennett's Farm Property from IBM in February 1998.

In April 1999, the Plaintiff filed with the Planning and Zoning Commission an application for a zone change and text amendment as part of a proposed development of the Bennett's Farm Property that would include a 475,000 square foot office-ho-

tel/conference center, an 18–hole golf course, and 286 age restricted town homes. The application was met with opposition, particularly from the Ridgefield Open Space Association ("ROSA"), a not-for-profit neighborhood association whose stated mission is "to preserve the 680 acre Bennett's Pond Property as open space in perpetuity." In September 1999, the Planning and Zoning Commission denied the Plaintiff's application.

On October 14, 1999, the Plaintiff applied for a permit from the Town's Inland Wetlands Board ("the Wetlands Board") to allow five wetlands crossings necessary to construct a loop road from Bennett's Farm Road to two proposed residential subdivisions totaling thirteen lots on the North Parcel. On April 13, 2000, the Wetlands Board denied the application for several reasons, one of which was that it needed to know how the Plaintiff intended to develop the entire 682–acre tract before it could properly rule on the wetlands application. The Plaintiff appealed this decision to the Connecticut Superior Court, which rejected the above-specified reason given by the Wetlands Board, but nonetheless dismissed the appeal based upon a finding that there were reasonable and prudent alternatives for the location of the proposed road.

On January 24, 2002, as part of the Planning and Zoning Commission's pre-application process for a proposed ten-lot subdivision on a portion of the North Parcel, the Plaintiff filed the "Affordable Housing Mixed Use Master Plan of Development" ("the Master Plan"), which showed the Plaintiff's plans for development of the entire Bennett's Farm Property. The Master Plan shows: (1) a residential development of 710 units (including the ten-lot subdivision), of which thirty percent would constitute affordable housing under Connecticut's Affordable Housing Appeals

Procedure, Conn. Gen.Stat. § 8–30g; and (2) 445,000 square feet of commercial development. The proposed development of the South Parcel was for both 150 residential units, thirty percent of which would constitute affordable housing, and 445,000 square feet of commercial development. The contents of the Master Plan were widely reported to the local press. In addition, the Master Plan was discussed by the Board of Selectmen and presented before the Planning and Zoning Commission during public hearings.

On March 14, 2001, the Plaintiff filed an application with the Planning and Zoning Commission for a ten-lot subdivision, and an application with the Wetlands Board for various regulated activities within wetlands and upland review areas, including the construction of a loop road from Bennett's Farm Road to provide access to seven of the ten lots of the proposed subdivision. Then, on August 31, 2001, the Plaintiff filed with the Planning and Zoning Commission an application for a zone change and amendment to the Town Plan of Conservation and Development as part of a development plan consistent with the Master Plan. Included in application were 700 residential units (plus the 10–lot subdivision), of which 210 units would constitute affordable housing under Connecticut law. Like the Master Plan, this application proposed to develop the South Parcel with 445,000 square feet of commercial development and 150 residential units. These applications were met with organized opposition, particularly from ROSA.

On September 4, 2001, the Wetlands Board denied the Plaintiff's wetlands application. On September 25, 2001, the Planning and Zoning Commission denied the Plaintiff's subdivision application. The Plaintiff appealed these decisions to the Connecticut Superior Court, but withdrew the appeals as moot following the Town's

eminent domain seizure of the North Parcel on December 20, 2001. Furthermore, after the seizure of the North Parcel, the Plaintiff withdrew its application for a zone change and amendment to the Town Plan of Conservation and Development.

On March 7, 2005, the Plaintiff filed an application for a zone change and amendment to the Town Plan of Conservation and Development as part of a development plan for 510 residential units that would constitute affordable housing under Connecticut law. This plan contemplated sewer service from the City of Danbury. The Planning and Zoning Commission directed its staff to prepare a resolution of denial of the Plaintiff's application. Before the Planning and Zoning Commission voted on the resolution, however, the Plaintiff withdrew the application pursuant to a settlement agreement, dated August 31, 2005, between the Plaintiff and the Town.

The Court need not delve into every instance brought forward by the Plaintiff that shows the Defendants' allegedly wrongful intent and conduct in this matter. The Court summarizes by noting that, according to the Plaintiff, the Board of Selectmen actively began to pursue acquisition of the Bennett's Farm Property by eminent domain after the Plaintiff had filed its Master Plan in January 2001. The Board of Selectmen initially determined that the Town should take the entire Bennett's Farm Property for open space. The Plaintiff maintains that the overriding objective in seizing the Bennett's Farm Property via eminent domain was to ensure that there would be no residential development, particularly affordable housing, on that property.

With regard to the Fourth Count of the Complaint, the following facts are relevant. On March 20, 2007, the Planning and Zoning Commission adopted new zoning regulations ("the New Regulations") that were to take the place of the old zoning regulations ("the Old Regulations"), effective May 1, 2007. The New Regulations eliminated the specified residential uses of the Town's Zoning Regulations for CDD zones. Specifically, the New Regulations removed Section 4.10.0 G.2(E) of the Town's Zoning Regulations, which had permitted residential use in CDD zones for "[f]acilities for accredited institutions of higher learning ... includ[ing] student dormitories and residences for executive and professional staff."

The Plaintiff filed an affordable housing application ("the Affordable Housing Application") on April 25, 2007. After a series of meetings, the Planning and Zoning Commission held a meeting on July 3, 2007 where it unanimously adopted the following official statement ("Official Statement"):

> The Ridgefield Planning an Zoning Commission hereby stipulates, and states for the public record, that the Corporate Development District (CDD) Zone regulation, section 5.5 of the Ridgefield Zoning Regulations, which became effective on May 1, 2007, and any property located within that zone, are not subject to the industrial use exemption set forth in the affordable housing Statute, Connecticut General Statutes Section 8–30g(g)(2)(A) and (B).

The Fourth Count of the Complaint alleges that the Defendants violated the FHA by adopting the New Regulations. According to the Plaintiff, the Planning and Zoning Commission, consistent with the actions of other Town officials, tried to preclude or interfere with affordable housing on the Plaintiff's property. Furthermore, the Plaintiff contends that the Official Statement is simply a litigation-driven measure implemented to give the impression that the issues presented in the Fourth Count are moot.

## II. DISCUSSION

In the Fourth Count of the Complaint, the Plaintiff alleges that the Defendants violated the FHA. The Defendants now ask the Court to dismiss the Fourth Count, arguing that the issues contained therein are moot, and that it fails to state a claim upon which relief can be granted. The Court shall analyze the parties' arguments seriatim.

### A. MOTION TO DISMISS STANDARDS

 A Rule 12(b)(1) motion seeks dismissal for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "When considering a motion to dismiss for lack of subject matter jurisdiction ..., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Nevertheless, "[t]he burden of proving jurisdiction is on the party asserting it." *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir.1996) (internal quotation marks omitted). That is, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos,* 140 F.3d at 131. A court may consider affidavits and other material beyond the pleadings to resolve jurisdictional questions under Rule 12(b)(1). *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001).

 A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416

U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

### B. MOOTNESS

 "A party seeking to have a case dismissed as moot bears a heavy burden." *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.,* 397 F.3d 77, 84 (2d Cir.2005). "There is no question that 'Article III of the Constitution limits federal "judicial Power," that is, federal-court jurisdiction, to "Cases" and "Controversies." ' " *Id.* (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). "[T]he dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* (internal quotation marks omitted). "When the issues in dispute between the parties are no longer "live," a case becomes moot, and the court—whether trial, appellate, or Supreme—loses jurisdiction over the suit, which therefore must be dismissed...."

*Id.* (internal citations and quotation marks omitted).

■ The Defendants first argue that the Fourth Count is moot because the Plaintiff filed Affordable Housing Application prior to the effective date of the New Regulations. According to the Defendants, the New Regulations cannot affect the Planning and Zoning Commission's review of the Plaintiff's Affordable Housing Application. The Plaintiff counters by arguing that this principle, by itself, does not make the Fourth Count moot because it is commonplace in the world of real estate development for developers to make successive applications as modifications in the development plan arise, sometimes at the request of the planning and zoning commission itself.

The Court is inclined to agree with the Plaintiff on this issue. There is no dispute that the Planning and Zoning Commission would review the Affordable Housing Application under the Old Regulations, not the New Regulations. *See Samperi v. Planning and Zoning Comm'n of City of West Haven,* 40 Conn.App. 840, 844, 674 A.2d 432 (1996). Nevertheless, the Court agrees with the Plaintiff that successive applications are common in real estate development, and, if for some reason the Plaintiff had to file such successive applications, the New Regulations would apply. The Fourth Count of the Complaint is not narrowly confined to issues involving the Affordable Housing Application. Instead, it discusses, more broadly, a general scheme by the Defendants to prevent the development of affordable housing on the South Parcel. Thus, the Court shall not dismiss the Fourth Count because the Old Regulations apply to the Affordable Housing Application.

■ The Court also declines to consider the Fourth Count moot because of the Official Statement. Connecticut law, spe-cifically Conn. Gen.Stat. § 8–30g, "encourage[s] and facilitate[s] the much needed development of affordable housing throughout the state." *JPI Partners, LLC v. Planning and Zoning Bd., City of Milford,* 259 Conn. 675, 689, 791 A.2d 552 (2002). When an appeal is taken of a zoning and planning commission's denial a housing application containing affordable housing, the zoning and planning commission's burden of proof on appeal is substantial. *See* Conn. Gen.Stat. § 8–30g(g)(1). Upholding a planning and zoning commission's decision is significantly easier, however, if the planning and zoning commission can demonstrate that the denied application would locate affordable housing in an area that is zoned for industrial use and which does not permit residential uses, and that the development is not assisted housing. *See id.* § 8–30g(g)(2). In short, this industrial zone exemption makes it easier to uphold a planning and zoning commission's denial of an affordable housing application when the application calls for such housing in an area zoned for industrial use.

Here, the Planning and Zoning Commission, through the Official Statement, stipulated that the New Regulations, which eliminated all residential uses in areas zoned CDD, would not be subject to the industrial zone exemption. In theory, the Official Statement makes it easier for affordable housing applicants to challenge denials of their applications. According to the Defendants, they, through the Official Statement, have voluntarily negated the allegedly wrongful action claimed by the Plaintiff.

■ Notwithstanding the Defendants' assertion, however, the Court does not believe that the Official Statement renders the Fourth Count moot. "The voluntary cessation of allegedly illegal activities

can moot a claim only if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Seidemann v. Bowen,* 499 F.3d 119, 128 (2d Cir.2007) (internal quotation marks omitted). "Ordinarily, a party's voluntary cessation of allegedly unlawful conduct ... does not suffice to moot a case." *Id.* (internal quotation marks omitted). Indeed, "a party claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks omitted).

In the Court's view, the Defendants have not met this formidable burden. From what the Court can discern in the parties' submissions, it is not absolutely clear that the alleged problems identified by the Plaintiff could not reasonably be expected to recur. For example, the Court sees nothing that would prevent the issuance of a future "official statement" reversing the current position of the Official Statement at issue. Indeed, it is conceivable that the Planning and Zoning Commission could alter its positions on this matter a number of times simply to avoid any liability in this litigation.[1] In light of this fact, Court rejects the Defendants' mootness arguments. Consequently, with regard to the jurisdictional arguments, the Defendants' motion to dismiss (dkt. # 162) is **DENIED.**

## C. FAILURE TO STATE A CLAIM

The Defendants further argue that the Fourth Count of the Complaint fails to state a claim upon which relief can be granted. Specifically, the Defendants allege that the Official Statement is fatal to the Plaintiff's FHA claim. Additionally, the Defendants claim that the Fourth Count fails because the industrial use exemption in Connecticut law applies only to areas zoned exclusively for industrial use, and the Town's CDD zoning designation permits mixed zoning.

The Court begins by rejecting the Plaintiff's argument that it cannot consider the Official Statement at all. It is true that, for the purposes of a Rule 12(b)(6) motion to dismiss, the Court should only look at the facts alleged in the operative complaint. Nevertheless, there are narrow, specific circumstances in which the court may consider extrinsic evidence for a Rule 12(b)(6) motion without converting it to a motion for summary judgment. *See Estate of Axelrod v. Flannery,* 476 F.Supp.2d 188, 199–200 (D.Conn.2007) ("The extrinsic evidence that the court may consider on a motion to dismiss without having to treat the motion as one for summary judgment is limited to materials that are integral to the plaintiff's complaint or materials subject to judicial notice.") Although the exact language of the Official Statement was not included in the Complaint, paragraph 94 of the Complaint states that "[o]nly after meeting in executive session on **five** occasions ... did the [Planning and Zoning] Commission, post hoc, conclude that the new CDD was not exempt from C.G.S. 8–30g." (Dkt. # 154 ¶ 94) (emphasis in original). This is a specific reference to the Official Statement. Thus, the Complaint incorporates the Official Statement by reference, and the Court is free to consider it.

---

1. The Court in no way finds that the Planning and Zoning Commission has, in fact, acted in such a way. The Court merely points out that such potential altering of the Planning and Zoning Commission's positions precludes the Court from finding the Fourth Count moot.

Nevertheless, the Court shall not grant the motion to dismiss based on arguments set forth by the Defendants. The Defendants first argue that the Official Statement prevents the Commission from relying on the New Regulations to preclude affordable housing in the CDD zone. The Court, however, does not read the Official Statement this way. The Official Statement does not broadly say that the Planning and Zoning Commission cannot rely on the New Regulations to preclude affordable housing; rather, it states that the new CDD zoning regulation, and property located within that zone, are not subject to the industrial use exemption. In any event, to the Court's mind, the Defendants' argument here is essentially the same as the Official Statement mootness argument, which the Court has rejected above. The Court shall not dismiss the Fourth Count on this basis.

The Defendants next argue that the Fourth Count fails because the industrial use exemption in Connecticut law applies only to areas zoned exclusively for industrial use, and the Town's CDD zoning designation permits mixed zoning. The Court shall not grant the motion to dismiss on this basis because, in the Court's view, the Defendants are asking the Court to decide the merits of claim contained in the Fourth Count. For example, the Defendants wish the Court to find that the CDD designation permits non-industrial uses. Such a decision is not proper here, especially considering the Complaint expressly alleges that the New Regulations were enacted for the purpose of making the CDD zone an industrial zone. For a motion to dismiss, the court must look at the face of the Complaint and accept as true all factual allegations contained therein. The Defendants' arguments are better suited for a summary judgment motion, for which the Court can consider admissible evidence.[2] Therefore, with regard to the failure to state a claim arguments, the Defendants' motion for summary judgment (**dkt. # 162**) is **DENIED**.

### III. CONCLUSION

For foregoing reasons, the Defendants' motion to dismiss (**dkt. 162**) is **DENIED**.

---

**2.** It also appears that there are not many decisions from the Connecticut courts on the issue of whether the industrial use exemption applies only to areas zoned exclusively for industrial use. The Court would prefer to consider this issue after the parties have had a better chance to set forth their arguments, and after the Court has had the opportunity to review the record in this case.